## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ISIDRO FLORES TEXIDOR, Jr.,** | : | |
| | : | |
| **Petitioner,** | : | **Civil Action No. 4:10-CV-1884** |
| | : | |
| **v.** | : | **(Judge Caldwell)** |
| | : | |
| **LOUIS S. FOLINO,** | : | **(Magistrate Judge Carlson)** |
| **Superintendent of the State** | : | |
| **Correctional Institution at Greene,** | : | |
| | : | |
| **Respondent.** | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

In this action, Isidro Flores Texidor, Jr. ("Petitioner" or "Texidor") petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that his convictions for aggravated assault and aggravated assault with a deadly weapon stemming from a January 2004 home invasion in Schuylkill County, Pennsylvania, should be vacated due to violations of his right to due process at trial, allegedly because there was insufficient evidence presented at trial to convict Texidor of these crimes. Texidor does not dispute his guilt with respect to all of his convictions that stemmed from this event, but instead argues discretely that his conviction for three counts of aggravated assault, and two counts of aggravated assault with a deadly

weapon, must be set aside because his conviction for these offenses were not
supported by sufficient evidence at trial. Texidor has presented this argument to the
trial court, and later to the Pennsylvania Superior Court, both of which upheld the
convictions.[1] Like those courts, we find no constitutional infirmity with Texidor's
convictions, and thus recommend that his petition for habeas relief be denied.

## II.   **BACKGROUND**

The series of events that give rise to Texidor's conviction and, ultimately, to
the instant habeas proceedings began during the early morning hours on January 10,
2004, when Texidor and two accomplices forced their way into Christine Gearhart's
home in Shenandoah, Pennsylvania, apparently intending to commit a robbery. The
trial court summarized the events that occurred:

> [O]n January 10, 2004[,] at approximately 2:30 A.M.,
> Christine Gearhart, Christine Pribish, Ryan Winkler, a man
> named Maurice, and Gearhart's three children ages 4, 8 and
> 9 were in Gearhart's residence at 133 Pioneer Road,
> Shenandoah. Gearhart and Maurice were upstairs sleeping,
> Gearhart's three children were asleep [in the living room in

[1] The Pennsylvania Supreme Court declined Texidor's petition for review,
and therefore the Superior Court's ruling on the merits of Texidor's direct appeal
is the "last reasoned decision" with respect to Texidor's claims on direct review,
and is therefore the decision that informs our review in this proceeding. See Bond
v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008). Although Texidor pursued post-
conviction relief through collateral challenges brought pursuant to Pennsylvania's
Post-Conviction Relief Act, 42 Pa. Cons. Stat. Ann. §§ 9541 et seq., the claims
raised in those proceedings are not implicated in the instant habeas proceeding.

front of the television] and Pribish and Winkler were in the kitchen. There was a knock at the door and Pribish approached the door to be told that "Man" was at the door. Pribish woke Gearhart to answer the door. As Gearhart opened the door, three men later identified as Nazaniel Flores, Isidro Texidor, and David Ortega, Jr., a juvenile, pushed their way into her residence.

(Doc. 24, Decision of Pennsylvania Superior Court dated July 30, 2007) (quoting opinion of the Court of Common Pleas dated September 13, 2006.)

After storming the home, Texidor immediately grabbed Gearhart, placed her in a headlock, and held a handgun against her head. The men ordered Gearhart and Pribish to sit on the floor in the kitchen, which was located down a hallway from the front door. Flores put his foot against Ryan Winkler's neck, while Ortega bound Pribish's hands with duct tape. Ortega then tried to secure Gearhart's hands with duct tape, but she was uncooperative and refused to comply. In response, Texidor placed a pistol against her head and ordered her to put her hands out. When she still refused to cooperate, Texidor struck her in the back of the head with the pistol, and threatened to shoot her if she did not submit. Gearhart testified at trial that she heard the gun make a noise that sounded like "chick, chick" while it was being held against her head. (Doc. 24, Ex. 4, Trial Transcript, at 37.)[2] After being threatened in this manner, one of the assailants bound Gearhart's wrists with the duct tape.

---

[2] Hereafter, citation to the notes of testimony taken during Texidor's trial will be referred to as "N.T." and the page number in the record.

At this point, Flores and Texidor left Winkler and the two women in the kitchen, and went upstairs. Gearhart, Pribish, and Winkler all testified that they heard sounds of a struggle coming from upstairs, which was punctuated by one or more gunshots, followed by screams from Gearhart's eight year-old daughter who was awakened after a bullet struck the couch on which she had been sleeping. Investigators later determined that the bullet struck the couch and lodged itself a mere six inches from where Gearhart's daughter lay sleeping, and directly adjacent to the spot where Gearhart's two sons, aged four and nine, were sleeping on the floor. In the panic that ensued, Gearhart chewed through the duct tape that bound her wrists and ran upstairs to find Flores rummaging through her dresser or armoire. Unable to find what he was after, Flores demanded that Gearhart give him money and access to her safe. (Doc. 24, Decision of Pennsylvania Superior Court dated July 30, 2007, at 2-3.)

What transpired next is not entirely clear from the record, but the testimony at trial indicates that Texidor and Flores decided to depart the home for an unknown destination. However, after the men left, Flores called Pribish and asked to speak with Maurice – the man who was supposed to have been asleep upstairs with Gearhart when Texidor, Flores, and Ortega arrived, but who was never seen. Pribish gave the phone to Gearhart, who told Flores that Maurice was not at the home. This news

inspired Flores to tell Gearhart that he would return to "heat [her] whole place up," which Gearhart interpreted to mean the Flores would come back to her house and "shoot the place up."   (N.T., at 47.)   In fact, Texidor and Flores did return to Gearhart's house, although they remained in their car, and left before the police arrived.   Gearhart testified that she remained on the porch outside her home, apparently intending to protect her children from the men.   (Id.)

Texidor and Flores were later arrested, and tried jointly before a jury in January 2006.  Following trial, the jury found Texidor guilty of one count of robbery, three counts of aggravated assault, three counts of aggravated assault with a deadly weapon, three counts of simple assault, two counts of unlawful restraint, and criminal conspiracy (to commit robbery, aggravated assault, and unlawful restraint).[3]  The trial court convened a sentencing hearing on April 24, 2006.  (N.T., April 24, 2006, at 2-10.)  Following this proceeding and consideration of Texidor's pre-sentence report, the trial court sentenced Texidor to an aggregate term of imprisonment of 198 to 396 months imprisonment.

---

[3]  These offenses are codified at 18 Pa. Cons. Stat. Ann. §§ 3701, 2702(a)(1), 2702(a)(4), 2701, 2902, and 903, respectively.

Following his conviction and sentence, Petitioner pursued timely relief in the trial and appellate courts, on both direct and collateral appeal.[4] Thus, Petitioner first moved the trial court for judgment of acquittal, arrest of judgment, or for a new trial, and filed a motion to modify and reduce his sentence.  In support of these motions, Texidor argued that the evidence at trial was insufficient to convict him of aggravated assault with respect to Christine Gearhart, Ryan Winkler, and Christine Pribish; and that there was insufficient evidence to convict him of aggravated assault with a deadly weapon as to Ryan Winkler and Christine Pribish.  The trial court denied these motion on May 22, 2006.

Texidor took a timely appeal to the Pennsylvania Superior Court, again arguing before that court that his convictions for aggravated assault, and for aggravated assault with a deadly weapon with respect to Winkler and Pribish, were not supported by sufficient evidence at trial.  In an unpublished decision issued July 30, 2007, the Superior Court affirmed the conviction and judgment of sentence that had been entered in the Court of Common Pleas of Schuylkill County, with one judge of the court concurring in part and dissenting in part.  (Doc. 24.)  On August 28, 2007,

---

[4] The record before the Court does not contain copies of each of Petitioner's post-trial motions and written dispositions of the motions.  However, Respondent has represented that Texidor has accurately set forth the procedural and factual history of this matter, and there appears to be no dispute with any of Texidor's representations regarding the background applicable to this case.

Texidor petitioned the Pennsylvania Supreme Court for allowance of appeal.  By order entered on December 12, 2007, the Pennsylvania Supreme Court denied the petition, and effectively ended Texidor's direct appeals.

Undeterred, Texidor next filed a petition for post-conviction collateral relief under Pennsylvania's Post-Conviction Relief Act, 42 Pa. Cons. Stat. Ann. §§ 9541 et seq. ("PCRA"), arguing that his trial counsel had rendered constitutionally ineffective assistance by interfering with the petitioner's right to testify at trial.  The trial court convened a hearing on Petitioner's PCRA petition on April 30, 2008, and on December 17, 2008, entered an order denying the petition.  Texidor took a pro se appeal of this decision to the Pennsylvania Superior Court, which affirmed the PCRA court's decision on October 15, 2009.  Texidor filed a motion for allowance of appeal with the Pennsylvania Supreme Court, which was also denied on or about March 23, 2010.

On September 9, 2010, Texidor filed the instant petition for habeas relief pending before this Court.  In this petition, Texidor challenged his 2006 convictions for aggravated assault against Christine Gearhart, Ryan Winkler, and Christine Pribish; and further challenges his convictions for aggravated assault with a deadly weapon with respect to Ryan Winkler and Christine Pribish.  (Doc. 1.)  As a legal basis for habeas relief, Texidor argues that his conviction for these crimes violated

the Fourteenth Amendment to the United States Constitution because the convictions were not supported by sufficient evidence to prove Texidor's guilt beyond a reasonable doubt.   In addition, Petitioner argues that the state court decisions concerning these issues represent an unreasonable application of clearly established federal law relevant to this matter.   (Id.)   These arguments are the exclusive claims that Texidor has brought in his petition.[5]

## III.   DISCUSSION

### A.   28 U.S.C. § 2254(d): The Standard.

Section 2254(a) of Title 28 of the United States Code provides the court with jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law.   28 U.S.C. § 2254(a).   Thus, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."   Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).   Furthermore, and specifically relevant to the

---

[5] Although the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, requires total exhaustion of claims brought as part of a petition for habeas corpus relief, there appears to be no dispute in this case that Texidor has fully exhausted the claims presented in the petition through his efforts to seek review of these claims on direct review by Pennsylvania's appellate courts. Accordingly, and because we can perceive no failure to exhaust the claims presented, we recommend that the Court proceed to evaluate the merits of Texidor's petition.   For the reasons explained further below, we will recommend that the Court deny the petition on its merits.

petition before the Court, the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") limits a federal court's authority to grant habeas relief when a state court

has adjudicated a petitioner's federal claim on its merits.  See 28 U.S.C. § 2254(d).

In this regard, 28 U.S.C. § 2254(d) provides that:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).  In this case, Petitioner argues that the adjudication

of his state court convictions for aggravated assault, and for aggravated assault with

a deadly weapon as to Christine Pribish and Ryan Winkler, resulted from an

unreasonable application of clearly established federal laws.

The Supreme Court has instructed lower courts that the "contrary to" and

"unreasonable application" clauses set forth in 28 U.S.C. § 2254(d)(1) should be

considered independently.  Thus, with respect to section 2254(d)(1), a federal habeas petition will be entitled to relief only where "the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  In Williams, the Supreme Court emphasized that most habeas cases will not satisfy these requirements, which require a clear and direct contradiction of Supreme Court precedent.  Id. at 406-08; see also Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999) (en banc) (in order to establish entitlement to relief under the "contrary to" clause, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; . . . [instead the] petitioner must demonstrate that Supreme Court precedent requires the contrary outcome.").

With respect to the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1), a federal habeas court is not empowered to issue a writ of habeas corpus only because it concludes "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Williams, 529 U.S. at 411.  Instead, relief is available only where the state court decisions is also objectively unreasonable.  Id.  Hence, where "it is the state court's application of governing

federal law that is challenged, the decision 'must be shown to be not only erroneous, but objectively unreasonable.'" Waddington v. Sarausad, 555 U.S. 179, 129 S. Ct. 823, 831 (2009) (quoting Middleton v. O'Neil, 541 U.S. 433, 436 (2004) (quotation omitted)).  See also Appel v. Horn, 250 F.3d 203, 209 (3d Cir. 2001) ("A state court decision will be an 'unreasonable application' if (1) 'the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular . . . case;' or (2) 'the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'") (quoting Williams, 529 U.S. at 407). This inquiry is an objective one, and "a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)).

Regarding 28 U.S.C. § 2254(d)(2), which provides that federal courts may grant habeas relief when a state court adjudication was based upon on unreasonable determination of the facts in light of the evidence presented, the petitioner must show that a reasonable factfinder could not have reached the same conclusion in light of the evidence presented.  However, if a reasonable basis existed for the factual findings reached in the state courts, then habeas relief is unavailable.  See Campbell v.

<u>Vaughn</u>, 209 F.3d 280, 290-91 (3d Cir. 2000).   Moreover, and significantly, "a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

When a petitioner has argued that he is entitled to relief pursuant to 28 U.S.C. § 2254(d)(1), the court must begin its consideration of the petition by determining the relevant law that was clearly established by the Supreme Court, and which the petitioner claims the state courts unreasonably applied.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  <u>Williams</u>, 529 U.S. at 412.

## B.   Texidor's Claims for Habeas Relief Under the Foregoing Standards are Meritless.

In this case, Texidor claims that the adjudication of his state court conviction for aggravated assault, and for aggravated assault with a deadly weapon as to Pribish and Winkler, resulted from an unreasonable application of clearly established federal laws.   Specifically, Texidor claims that the Superior Court of Pennsylvania unreasonably applied the principles established in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1970) and <u>In re Winship</u>, 397 U.S. 358 (1970) to the facts of his case.  In short, these

12

cases make clear that an accused must be afforded due process under the Fourteenth Amendment to the United States Constitution, and that as part of this due process the evidence to convict an accused of a particular crime must be sufficient to prove beyond a reasonable doubt that the accused committed the crime charged. Jackson, 443 U.S. at 316; In re Winship, 397 U.S. at 364; see also Fiore v. White, 531 U.S. 225, 228-29 (2001) (per curiam) ("We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt.") (citing Jackson and Winship).  In Jackson, the Supreme Court provided the following applicable standard to be used in a federal habeas corpus proceeding where the sufficiency of the evidence in a state criminal trial was at issue prior to the passage of AEDPA:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to "ask itself whether it believes that the
evidence at the trial established guilt beyond a reasonable doubt." . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

443 U.S. at 318-19.  Notably, the Commonwealth may sustain its burden of proving every element of a crime charged beyond a reasonable doubt by means of wholly circumstantial evidence.  See Commonwealth v. Davido, 868 A.2d 431, 435 (Pa.

2005), cert. denied, 546 U.S. 1020 (2005) (holding that circumstantial evidence alone sufficient to convict defendant of any crime, including murder).

With these established principles in mind, Texidor argues that his conviction for aggravated assault, in violation of 18 Pa. Cons. Stat. Ann. § 2702(a)(1), and for aggravated assault with a deadly weapon, in violation of 18 Pa. Cons. Stat. Ann. § 2702(a)(4), violated the Due Process Clause of the Fourteenth Amendment because there was insufficient evidence produced at trial to establish the elements of these claims as defined by statute and as interpreted by Pennsylvania case law.

Under Pennsylvania law, aggravated assault is defined as follows:

> (a)    Offense defined.  A person is guilty of aggravated assault if he:

> (1)    attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life.

18 Pa. Cons. Stat. Ann. § 2702(a)(1).  After setting forth this statutory definition, the Superior Court provided the following carefully reasoned explanation – guided by a standard virtually indistinguishable from Jackson v. Virginia – as to why the court found there to have been sufficient evidence to sustain Texidor's conviction for aggravated assault:

The Commonwealth proceeded at all times under the theory of "attempt" rather than accusing Appellant of successfully causing actual serious bodily injury to the victims.  As our Supreme Court recently explained in ***Commonwealth v. Matthew***, 909 A.2d 1254 (Pa. 2006),

> A person may be convicted of aggravated assault graded as a first degree felony if he attempts to cause serious bodily injury to another . . . . Serious bodily injury means bodily injury which creates a substantial risk of dead or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.  18 Pa.C.S. § 2301.  A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.  18 Pa.C.S. § 901(a).  An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury.

***Id.*** at 1257 (quotations and some citations omitted).

A person acts intentionally with respect to a material element of an offense when it is his conscious object to engage in conduct of that nature or to cause such a result.  ***Id.*** (relying on 18 Pa.C.S.A. § 302(b)(1)(I)).  An "intent" is a "subjective frame of mind" and is of necessity "difficult of direct proof."  ***Id.***  The intent to cause serious bodily injury may be proven by direct or by circumstantial evidence. ***Id.*** In determining whether a person possessed the intent to cause serious bodily injury, an appellate court must look at the totality of the circumstances proven at trial. ***Id.***  Simple assault, combined with other "surrounding circumstances," may be sufficient to support a finding that an assailant attempted to inflict serious bodily injury.  ***Id.*** (citing ***Commonwealth v. Alexander***, 383 A.2d 887, 889 (Pa. 1978)).  See ***Commonwealth v. Sims***, 2007 Pa. Lexis 861, at *1, 30 (Pa. April 18, 2007) (holding that the failure to specifically charge a defendant with the inchoate crime of "attempt" does not preclude a guilty verdict of "attempt" when only the substantive crime has been charged).

15

In this case, the evidence adduced at trial indicates that Appellant pushed his way into Gearhart's home, grabbed her in a headlock and forced her to kneel on the kitchen floor. N.T., 1/17/06, at 191-92. Gearhart resisted and begged Appellant "don't do this" because she feared for her children. *Id.* at 193. Appellant responded by striking Gearhart on the back of her head with the butt of his handgun. He then readied the weapon for firing so that Gearhart heard a "chick, chick" noise while the gun was held to her head, and he threatened to shoot her if she did not submit to be bound with duct tape. N.T. 1/16/06, at 36-37. We cannot agree with Appellant that the threat to "shoot" Gearhart was not the equivalent of threatening to "kill" her. The handgun was held to the victim's head, not to some less vital part of her body. Nor can we agree with Appellant that this was a mere conditional threat premised on action (or lack of action) on the part of the victim. Gearhart complied with Appellant's demands and submitted to being bound because she feared Appellant was going to shoot her in the head and kill her. *Id.* at 50. These facts do not exonerate Appellant; they signify that Gearhart believed Appellant would carry out his threats. We agree with the trial court that the evidence is sufficient to sustain Appellant's conviction of aggravated assault under subsection 2702(a)(1) as to Gearhart.

Winkler testified that he was using the bathroom when Flores ordered him out of the room and told him to go downstairs. N.T. 1/17/06, at 145-147. When they reached the first floor of Gearhart's house, Flores grabbed Winkler and threw him face down onto the floor. *Id.* at 147, 192. Appellant then came over and held a gun to Winkler's head. *Id.* at 147-148. While Winkler lay on the floor, Flores put his foot on the victim's neck to hold him down. *Id.* at 150, 192. Winkler was told not to move. *Id.* at 159, 161. After Flores removed his foot from Winkler's neck, a gunshot rang from upstairs. *Id.* at 153. At that point, Winkler escaped out the back door of the residence and ran away. *Id.* He stated that he left because he was afraid of being shot and killed. *Id.*

Appellant assisted Flores in subduing Winkler by holding a handgun to Winkler's head while Flores ordered the victim to remain down on the floor. Holding a gun to a person's head while another

16

holds the victim down by placing a foot on the victim's neck constitutes a substantial step in inflicting serious bodily injury which creates a substantial risk of death to the victim. Viewing all the circumstances surrounding Appellant's acts toward Winkler, we conclude that it was Winkler's obedience that averted his death at Appellant's hands. We see no indication that Appellant would have refrained from striking Winkler in the head, as he did Gearhart, or that he would have failed to carry out his threats to shoot Winkler in the head if the victim resisted. We agree with the trial court that the evidence is sufficient to sustain Appellant's conviction under section 2702(a)(1) as to Winkler.

When Appellant and his two accomplices pushed their way into Gearhart's house, Appellant was waving a gun. *Id.* at 209. Ortega ordered Pribish to go into the kitchen and to sit on the floor. Ortega then bound Pribish's hands with duct tape and ordered her to keep her mouth shut. *Id.* at 190, 201. As Pribish watched, Appellant dragged Gearhart into the kitchen and forced her to kneel on the floor beside Pribish. *Id.* at 191-93. Appellant responded to Gearhart's pleas for the safety of her children by striking her on the back of her head with the butt of his handgun and ordering her to submit to be bound. *Id.* at 193. Pribish observed Flores throw Winkler to the floor and place his foot on Winkler's neck. *Id.* at 192. Pribish was right next to Gearhart when Appellant held his gun to Gearhart's head and readied it for filing. *Id.* at 191-92.

Based on her observations of Appellant's behavior toward Gearhart, and Flores' and Appellant's treatment of Winkler, Pribish was afraid that Appellant would shoot and kill her. *Id.* at 197, 203, 209. Nevertheless, when Pribish heard the gunshot fired upstairs, she did not escape with Winkler, but rather made her way to the children as fast as she could. *Id.* at 195. Her hands were still bound at this point, but she tried to comfort Gearhart's daughter, who was crying; she also attempted to keep the child quiet. N.T. 1/16/06, at 41-42; 1/17/06, at 198. (Pribish was still bound when Appellant and his accomplices departed. Gearhart had to use a knife to cut through the duct tape binding Pribish's hands. N.T. 1/16/06, at 46.) As a result of this incident, Pribish has had to seek psychological counseling for her nightmares and still suffers from

recurrent bouts of crying.  N.T., 1/17/06, at 218.  In light of all the surrounding circumstances, and in consideration of our Supreme Court's decisions in **Sims** and **Matthew**, we conclude that the evidence is sufficient to sustain Appellant's conviction of aggravated assault under subsection    2702(a)(1) as to Pribish.

(Doc. 24, Decision of the Pennsylvania Superior Court, at 11-15.)

The Superior Court gave similarly careful treatment to Texidor's claim of error with respect to his conviction for aggravated assault with a deadly weapon, in violation of 18 Pa. Cons. Stat. Ann. § 2702(a)(4) (providing that a person commits aggravated assault with a deadly weapon if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon."). Specifically, Texidor claims that his conviction for aggravated assault with a deadly weapon should be vacated with respect to Pribish and Winkler; he concedes that sufficient evidence was presented at trial to support his conviction for this offense with respect to Christine Gearhart, to whose head he held a handgun following the home invasion, and who he struck with the butt of his gun when she refused to comply with the demands of Texidor and his accomplices.  Notwithstanding Texidor's attempt to minimize the significance of his conduct within the home by arguing that his conduct was focused exclusively on Gearhart, and not on Winkler and Pribish, the Superior Court did not agree.

In its opinion, the court observed that the Commonwealth had proceeded on a theory of attempt to commit aggravated assault with a deadly weapon, id. at 16, and the court explained the legal requirements under Pennsylvania law for proving an attempt, including the necessity of proving both the intent to commit a specific crime, and performance of a substantial step toward the commission of that crime, id. The court's analysis tracked substantially its discussion regarding Texidor's aggravated assault convictions, and the court concluded that the evidence presented at trial, viewed in the light most favorable to the prosecution, was sufficient to sustain Texidor's conviction for aggravated assault with a deadly weapon as to Pribish and Winkler.

Considering the record as a whole in the light most favorable to the Commonwealth, we agree entirely that a rational factfinder could have found Texidor guilty of the crimes for which he was convicted, and which he challenges in these proceedings. The Superior Court's careful and cogent discussion, and its conclusions, were eminently reasonable determinations of the facts in light of the evidence presented at trial, and were neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, because we find no basis to grant habeas relief in this case, we will recommend that the petition be denied and that a certificate of appealability not be issued.

## IV.   **RECOMMENDATION**

Accordingly, for the reasons set forth above, IT IS HEREBY RECOMMENDED THAT the petition for habeas corpus (Doc. 1) be DENIED.  IT IS FURTHER RECOMMENDED THAT a certificate of appealability should not issue in this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 9th day of June, 2011.

                     ***S/Martin C. Carlson***
                     Martin C. Carlson
                     United States Magistrate Judge